UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Aaron Caudill,

        Plaintiff,

      v.                                   Case No. 1:02cv663

Scott Owen, *et al.*,                Judge Michael H. Watson

        Defendants.

_____

## MEMORANDUM OPINION & ORDER
_____

Plaintiff brings this action to recover damages from alleged violations of the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983, and malicious prosecution pursuant to Ohio law. This matter is before the court upon Defendants' Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12 (b)(1) and 12 (b)(6). (Doc. 11)[1] Plaintiff has filed a Response in Opposition. (Doc. 15) Defendants have not filed a Reply. This matter is now ripe for review.

## I.    FACTUAL BACKGROUND

Plaintiff alleges that on the evening of September 14, 2000, he was leaving a nightclub and attempting to hail a cab when he was attacked by Eric Jones, a stranger. (Doc. 10 ¶¶ 11-12) Plaintiff alleges that two City of Cincinnati police officers, Defendants

---

[1]The motion is brought on behalf of all Defendants: Scott Owen, Brian Little, Michael Bell, Ryan Wesseling, Thomas Haas, and John Does 1-5.

Scott Owen and Brian Little, were sitting in a police car across from where he and Jones were located.  (Id. ¶ 14)   Plaintiff, a white male, claims that Jones, a black male, engaged him in a verbal altercation and then attempted to punch him, causing both men to fall to the ground.  (Id. ¶¶ 3, 11-17)  Plaintiff states that Officers Owen and Little started to make their way towards the two men when they saw Jones attempt to hit Plaintiff.  (Id. ¶¶ 14-17)  Plaintiff alleges both officers knew he had been the victim of a criminal attack, yet still restrained him.  (Id. ¶ 18)   Plaintiff claims that while Officer Owen undertook to handcuff Plaintiff, Jones broke free from Officer Little and kicked Officer Owen in the head.  (Id. ¶ 20)  Subsequently, Defendant Thomas Haas, a Cincinnati police officer who responded to the call for assistance, arrived on the scene and, according to Plaintiff, restrained and handcuffed Plaintiff with no resistance.  (Id. ¶ 21)  Plaintiff alleges that two off-duty officers, Defendants William Steward and Daniel Williams, both witnessing the fight while leaving a night club nearby, arrived at the scene and assisted Officer Little in subduing and arresting Jones.  (Id. ¶¶ 22-23)  Plaintiff alleges that several additional officers then appeared on the scene in response to the request for assistance. (Id. ¶ 24)  At that time, Jones and Plaintiff were placed under arrest.  (Id. ¶ 25)  Plaintiff claims that no witness names were obtained, with the exception of Officers Stewart and Williams, even though a large crowd gathered to watch the struggle.  (Id. ¶ 28)  Plaintiff claims that Defendant Ryan Wesseling, a Cincinnati police officer who arrived at the scene after Plaintiff was arrested and handcuffed, subsequently filed an assault charge against Plaintiff stating that he was seen kicking officer Owen.  (Id. ¶ 30)  However, Plaintiff alleges that Officer Owen told EMT personnel and the doctor who treated him that he was attacked by bystanders.  (Id. ¶ 32)  Plaintiff further alleges that Defendant Michael Bell, a Cincinnati police officer who also arrived at the scene

after Plaintiff's arrest, filed a charge against Plaintiff for disorderly conduct and resisting arrest. (Id. ¶ 34) Plaintiff claims these fabrications are the result of purpose and common design by Defendants. (Id. ¶¶ 29, 37) Plaintiff states that Jones was not charged for his assault on Plaintiff. (Id. ¶ 43)

Plaintiff explains that he was detained until he posted bond at $7,500. (Id. ¶ 44) Plaintiff states that a grand jury issued a six-count indictment against Plaintiff. (Id. ¶ 46) Plaintiff claims this resulted from presentation of fraudulent and malicious testimony by "a person or persons presently unknown." (Id.) Plaintiff explains that the prosecutor filed a motion to increase bond, based on the severity of the charges, and issued a statement to the press promising to seek severe penalties. (Id. ¶¶ 47-48) Pursuant to that request, Plaintiff's bond was increased to $20,000, and he was detained until payment was posted later that day. (Id. ¶ 49) Before trial, the court of common pleas judge conducted an evidentiary hearing, denying Plaintiff's motion to see the grand jury transcripts, denying Plaintiff's motion to suppress evidence, and denying Plaintiff's motion to dismiss. (Doc. 11 Ex. A, 1) On the date of the trial, Plaintiff alleges that Defendants directed the prosecution to offer a plea bargain whereby all other charges would be dropped in exchange for Plaintiff's guilty plea on a misdemeanor assault charge. (Doc. 10 ¶ 52) Plaintiff allegedly rejected the offer and insisted on his right to trial. (Id.) Plaintiff states that prosecution immediately dropped all charges except assault on a police officer. (Id.) At the conclusion of the State's case, the court found that prosecution failed to make out a *prima facie* case of assault but could proceed on a lesser charge of resisting arrest, for which Plaintiff was ultimately convicted. (Id. ¶ 53) Plaintiff explains that he appealed the conviction, and the

judgment was reversed by the First District Court of Appeals. (Id. ¶ 54) Plaintiff filed the instant action after prevailing on his criminal charges.

## II.    ARGUMENTS OF THE PARTIES

Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's Fourth Amendment claim because probable cause to arrest has been determined by the state court, and reconsideration of that matter is barred by the *Rooker-Feldman* doctrine. Defendants argue that Plaintiff's claim of conspiracy and presenting of false testimony to the grand jury in violation of his Fourth, Fifth and Fourteenth Amendment rights fails to state a claim because witnesses in judicial proceedings are absolutely immune from civil liability under section 1983. Defendants also argue that Plaintiff's conspiracy claim under section 1983 fails to contain sufficient factual allegations to withstand a motion to dismiss. In the alternative, Defendants argue they are qualifiedly immune from suit. Finally, Defendants argue that Plaintiff is time-barred from bringing his malicious prosecution claim.

In response, Plaintiff argues that *Rooker-Feldman* is inapplicable because the probable cause issue has not been fully and finally litigated in state court, and Defendants are not the same party before the court. Plaintiff also argues that Defendants are complaining witnesses, who do not receive absolute immunity from liability under section 1983. Plaintiff further argues that allegations of conspiracy were sufficiently pleaded because they are supported by facts that provide circumstantial evidence of improper intent, and civil conspiracy accusations do not require exact contents of private agreements. Plaintiff maintains that Defendants are not immune from suit because their actions were intentional and in violation of clearly established law. Finally, Plaintiff argues the malicious

prosecution claim is not time-barred because the cause of action did not accrue until criminal charges were dismissed.

III.    **ANALYSIS**

   A.    Standard of Review.

The Sixth Circuit has distinguished between facial and factual attacks among motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 592 (S.D.Ohio 2002). A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. *Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990). In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. *Id.* On the other hand, a factual attack is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Here, Defendants motion attacks the sufficiency of the pleadings, and is therefore a facial attack.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires this Court to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle him or her to relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir. 1990), *cert. denied*, 498 U.S. 867 (1990). However, this Court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

B.      *Rooker-Feldman*.

The *Rooker-Feldman* doctrine states that "lower federal courts lack subject matter jurisdiction to engage in appellate review of state court proceedings or to adjudicate claims 'inextricably intertwined' with issues decided in state court proceedings." *Peterson Novelties, Inc. v. Berkley*, 305 F.3d 386, 390 (6th Cir. 2002).[2]  In defining "inextricably intertwined," the Sixth Circuit has stated:

> [T]he federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.  Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Id.* at 391.  The Supreme Court has recently reminded courts that the *Rooker-Feldman* doctrine is narrow, and applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S.Ct. 1517, 1521-22 (2005).

Determining applicability of *Rooker-Feldman* requires inquiry into the relief sought by the federal court plaintiff, rather than the similarity between the issues involved in the state court proceeding and those raised in federal court. *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003).  If a federal plaintiff is not seeking to overturn a state decision, *Rooker-Feldman* does not bar the claim.  *Id.* at 598.  However, "[i]f a federal plaintiff 'present[s] some

---

[2]The doctrine gets its name from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) (only the U.S. Supreme Court has the power to hear appeals from state court judgments) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (federal district courts do not have jurisdiction to hear challenges to certain state-court decisions).

independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.' " *Exxon*, 125 S.Ct. at 1527, *quoting*, *GASH Assoc. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993).

Here, Plaintiff is not seeking to overturn his state conviction. Plaintiff has brought independent claims based on the Constitution and Ohio malicious prosecution law. A ruling on these claims will not require a review or rejection of the disposition of the criminal charges brought against Plaintiff in state court. Moreover, while Plaintiff's state-court claim sought relief from a criminal conviction, the federal relief requested is monetary.

In addition, a federal claim is not inextricably intertwined with a state claim where the state court did not consider the relevant issue, and instead relied on a procedural matter in making its final decision. *Peterson*, 305 F.3d at 393. The state court must clearly rule on the merits of the issue before *Rooker-Feldman* invokes a bar to federal jurisdiction. *Id*.; *see e.g., Stemler v. Florence*, 350 F.3d 578, 592 (6th Cir. 2003) (holding that *Rooker-Feldman* is no bar where state courts found that there was a genuine issue of material fact as to the plaintiff's assault and battery claim, but never considered or ruled on any elements of the plaintiff's federal claims based on fabrication of evidence or excessive force, nor did they address any facts or issues regarding these claims), *cert. denied sub nom.*, *Wince v. Stemler*, 125 S.Ct. 61 (2004).

In the instant case, the court of appeals determined the trial court erred in acquitting Plaintiff on the assault charge and instead convicting him of resisting arrest, because once the trial court granted Plaintiff's motion for acquittal on the assault charge, the indictment was dismissed as a matter of law and there was no indictment to amend. *Ohio v. Caudill*,

No. C-10234, slip op. at 3 (Ohio Ct. App. Nov. 14, 2001).  In addition, the court held that even if the trial court could have amended the indictment, resisting arrest is not a lesser-included offense of assault.  *Id.*  The court specifically declined to review Plaintiff's additional assignments of error, including lack of probable cause to arrest.  *Id.* Since the final state court decision dismissed all charges without definitively ruling on the issue of probable cause, this Court's decision regarding Plaintiff's constitutional claims need not be predicated upon a conviction that the state court was wrong.  Therefore, Plaintiff's claims should not be dismissed based on lack of jurisdiction, and Defendants Motion to Dismiss is DENIED on this basis.

   C.   Section 1983.

   Defendants also move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

   Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere.  *Tuttle v. Oklahoma City*, 471 U.S. 808 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights.  *Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001), *citing*, *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir.1998) *and United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir.1992).[3]

_____

[3]42 U.S.C. § 1983 provides:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial

Plaintiff claims Defendants violated his constitutional rights under the Fourth and Fourteenth Amendments by arresting him without probable cause (Count I); his right to due process under the Fourth, Fifth, and Fourteenth Amendments (Count II); and violated his right to equal protection under the Fourteenth Amendment (Count IV). In addition, Plaintiff claims that Defendants violated his constitutional rights under the Fourth and Fourteenth Amendments (Count I) and his right to due process under the Fourth, Fifth, and Fourteenth Amendments (Count II) by "acting in concert and conspiracy."

      1.    *Probable cause under Fourth and Fourteenth Amendments (Count I)*.

Defendants argue that they are entitled to qualified immunity from Plaintiff's claim that he was arrested without probable cause in violation of the Fourth and Fourteenth Amendments. Qualified immunity protects a public official from suit when the official, acting under the color of state law "d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818,(1982). The Supreme Court established a two-part test for determining whether a public official receives qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, a district court must ask whether the facts alleged, when viewed in the light most favorable to the plaintiff, demonstrate that the official's conduct violated a constitutional right. *Id*. If denial of a constitutional right is demonstrated, the second inquiry requires determining whether the right was so clearly established that a reasonable official would

capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

understand that their conduct violated the right. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Plaintiff argues that Defendants violated his due process rights under the Fourth and the Fourteenth Amendment rights when they arrested him without probable cause. The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. However, reliance upon the Due Process Clause is misplaced in this context because it is the Fourth Amendment that establishes protections in the criminal justice system. *See Radvansky*, 395 F.3d at 313. "Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interest always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases, including detention of suspects pending trial." *Id.*, *quoting*, *Gerstein v. Pugh*, 420 U.S. 103, 125 n. 27 (1975). The Due Process Clause does not mandate any additional safeguards beyond the Fourth Amendment. *Id.* Therefore, Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claim based on arrest without probable cause is GRANTED.

The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, reads, in pertinent part, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment requires that law officers establish probable cause prior to initiating an arrest. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). The Supreme Court has defined probable cause as "facts and circumstances within the officer's knowledge that are sufficient

to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37(1979); *see also Beck,* 379 U.S. at 91.  A reviewing court must determine probable cause "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Klien v. Long*, 275 F.3d 544, 550 (6th Cir. 2001).  An officer's belief as to probable cause for purposes of qualified immunity is ordinarily a question of law, determined by the court.  *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

Defendants argue that Plaintiff has not demonstrated that his constitutional rights were violated.[4]  Defendants maintain that they lawfully arrested Plaintiff for "engaging in fighting" in violation of Ohio Revised Code § 2917.11.  However, Plaintiff alleges that even though Defendants Owen and Little knew that he had been the victim of a criminal attack and had done nothing except attempt to defend himself by restraining his attacker, they nevertheless arrested him for engaging in fighting.  Defendants argue they had no duty to consider whether Plaintiff acted in self-defense in determining the existence of probable

---

[4]Any argument that Plaintiff has not met the "clearly established" requirement under the qualified immunity analysis would clearly be unavailing:

It is beyond doubt that in 2001 the law was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual."  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir.1999) (finding the probable cause standard to be clearly established in 1991).  Moreover, "[t]he law has been clearly established since at least the Supreme Court's decision in *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925), that probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest."  *Id.* (emphasis in original).

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 310 (6th Cir. 2005).

cause. However, while arresting officers have no obligation to seek out exculpatory evidence once probable cause to arrest exists, they may not "turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 305 (6th Cir. 2005), *citing*, *Ahlers v. Schebil*, 188 F.3d 365, 371-72 (6th Cir. 1999). When officers are in the process of determining probable cause, they must take into consideration exculpatory evidence. *Id*. Here, Plaintiff alleges that Defendants Owen and Little knew his actions were in self-defense. Based on these allegations, Defendants Owen and Little were required to consider Plaintiff's alleged actions of self-defense in assessing whether probable cause existed.

Defendants further argue the grand jury's indictment of Plaintiff conclusively establishes probable cause for arrest. Where an arrest is *pursuant to* a grand jury indictment, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002), *quoting*, *Ex parte Unites States*, 287 U.S. 241, 250 (1932). However, a *subsequent* grand jury indictment has not been held to establish probable cause for an earlier arrest. *Radvansky*, 395 U.S. at 308, n.13. Because Plaintiff's arrest was not pursuant to a grand jury indictment, the subsequent grand jury indictment does not establish probable cause for his arrest.

Viewing all allegations in Plaintiff's complaint as true, Defendants Owen and Little are not entitled to qualified immunity at this stage of the litigation. However, Plaintiff fails to allege any facts supporting the conclusion that Defendants Bell, Wesseling, or Haas arrested him absent probable cause. Plaintiff states that it was Officers Little and Owen who

were present during the original attack by Jones, and that Owen arrested Plaintiff for fending off the attack. While Officer Haas completed the handcuffing of Plaintiff when he arrived on the scene, Plaintiff does not allege that Haas, Wesseling, or Bell knew that he was the victim of an attack, or had a part in the decision to arrest him. As such, Plaintiff is unable to demonstrate that these Defendants arrested him without probable cause, and Defendants Bell, Wesseling, and Haas are entitled to qualified immunity on Plaintiff's Fourth Amendment claim for arrest without probable cause. Therefore, Defendants' Motion to Dismiss Plaintiff's claim is DENIED as to Defendants Owen and Little, but GRANTED as to Defendants Bell, Wesseling, and Haas.

2. *Due process under Fourth, Fifth, and Fourteenth Amendments (Count II)*

Plaintiff alleges Defendants violated his Fourth, Fifth, and Fourteenth Amendment rights by fraudulently inducing the grand jury to return indictments of charges that were clearly baseless.

Defendants argue correctly that police officers receive absolute immunity for witness testimony in a judicial proceeding. *Briscoe v. LaHue*, 460 U.S. 325, 346 (1983). Absolute immunity applies to grand jury witnesses even if they knowingly gave perjured testimony. *Grant v. Hollenbach*, 870 F.2d 1135, 1139 (6th Cir. 1989), *citing*, *Macko v. Byron*, 576 F.Supp. 875, 877 (N.D.Ohio 1983), *aff'd*, 760 F.2d 95 (6th Cir. 1983).

Furthermore, absolute immunity encompasses alleged conspiracies to provide perjured testimony in judicial proceedings. *Alioto v. City of Shively*, 835 F.2d 1173, 1174 (6th Cir. 1987); *see also House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992) ("A person may not be prosecuted for conspiring to commit an act that he may perform with impunity.")

Therefore, Defendants are absolutely immune from liability for providing, and conspiring to provide, testimony in a judicial proceeding or before the grand jury.[5]

However, Plaintiff argues that Defendants are complaining witnesses, and do not receive absolute immunity. Police officers performing functions not "intimately associated with the judicial phase of the criminal process" are complaining witnesses and receive only qualified immunity. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Police officers function as complaining witnesses when they initiate prosecution. *See Malley v. Briggs*, 475 U.S. 335, 340-41 (1986). In *Malley*, the Supreme Court accorded only qualified immunity to a police officer whose request for a warrant resulted in an allegedly unconstitutional arrest. *Id.* at 344-45. The court differentiated the absolute immunity police officers receive when participating in a judicial proceeding from acts designed to initiate criminal process. *Id.*

Plaintiff alleges that Defendants deprived him of his constitutional rights by fabricating the facts underlying the charges of assault, filed by officer Wesseling, and disorderly conduct and resisting arrest, filed by officer Bell. Therefore, Defendants acted as complaining witness and receive only qualified immunity. Because Defendants did not address the issue of qualified immunity from Plaintiffs claims in Count II, the Court will not rule upon the issue at this time and their Motion to Dismiss this claim is DENIED.

---

[5]While it is clear that Plaintiff alleges that Defendants Little and Owen gave false testimony in a hearing before Judge Nadel (Doc. 10 ¶ 50), Plaintiffs allegations that the Defendants gave false testimony before the grand jury are somewhat ambiguous. Plaintiff alleges that "a person or persons, presently unknown, fraudulently and maliciously presented false testimony before the grand jury . . . " (Id. ¶ 46), but he also alleges that "[t]hose defendants who testified before the Grand Jury, as well as those who conspired with them to present false testimony, knew at the time that there was no factual basis for any of these charges, and obtained the indictment through fraud." (Id. ¶ 50)

3.     *Equal protection under Fourteenth Amendment (Count IV).*

Plaintiff alleges he was "arrested, imprisoned, and prosecuted because of his race" in violation of the Equal Protection clause of the Fourteenth Amendment.  The Fourteenth Amendment prohibits States from making distinctions which either "burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference."  *Radvansky*, 395 F.3d at 312, *citing*, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Plaintiff's claim is also known as a claim of selective prosecution or selective enforcement.

In order to state a claim of selective prosecution, a plaintiff must demonstrate three elements:

> First, [the state actor] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations.  Second, he must initiate the prosecution with a discriminatory purpose.  Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997), *cert. denied*, 523 U.S. 1118 (1998) (quoting United States v. Anderson, 923 F.2d 450, 453 (6th Cir.1991)).  "With regard to the first element, it is an absolute requirement that the plaintiff make at least a *prima facie* showing that similarly situated persons outside her category were not prosecuted"  *Id.*, *citing*, *United States v. Armstrong*, 517 U.S. 456, 465 (1996).

Here, Plaintiff alleges that he was singled out because he is a white male.  Plaintiff alleges that Jones, a black male, was not prosecuted for his assault on Plaintiff, despite the

incident occurring in view of officers Owen and Little.[6]  However, Plaintiff applies the concept of "similarly situated" too broadly.  While Jones may have assaulted Plaintiff, Plaintiff does not allege that he assaulted Jones.  Therefore, the two men were not similarly situated.  It would be a different situation if Jones assaulted Plaintiff, and Plaintiff assaulted Jones, but only Plaintiff was charged.  This is not what occurred.  Based on their involvement in the altercation, Plaintiff and Jones were charged with identical charges, with the exception that Jones alone was charged with an assault on Officer Little.  (Doc. 11, Ex. B)  Plaintiff has not alleged facts which would support a claim that the decision to not bring charges against Jones for the alleged assault on Plaintiff was unconstitutional.  *Accord U.S. v. Armstrong*, 517 U.S. 456, 464 (1996), *quoting*, *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.' ")  For this reason, the Defendants' Motion to Dismiss Count IV should be GRANTED as to all Defendants.

        4.    *Civil Conspiracy*.

The Sixth Circuit has instructed that the standard for proving a civil conspiracy is as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.  Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  Each conspirator need not have known all of the details of the illegal plan or all of the participants involved.  All that must be shown is that there was a single plan,

---

[6]This allegation does not appear in the First Amended Complaint.  Plaintiff makes this claim for the first time in his Response in Opposition to Defendants' Motion.

that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Memphis, Tenn. Area Local American Postal Workers Union v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004), *quoting*, *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir.1985).

While heightened pleading requirements for civil rights plaintiffs in cases where the defendant raises the defense of qualified immunity were invalidated by the Supreme Court in *Crawford-El v. Briton*, 523 U.S. 574 (1998), lower courts may still "insist that the plaintiff put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment." *Goad v. Mitchell*, 297 F.3d 497, 504 (6th Cir. 2002) (citations omitted). A plaintiff may meet the required specificity by establishing conspiracy through circumstantial evidence. *Id.* at 505.

Plaintiff's factual allegations regarding his conspiracy claim are as follows:

At some point presently unknown to plaintiff, the defendants conspired to create numerous false accusations against Plaintiff and to arrest and prosecute Plaintiff on the basis of these accusations. (Doc. 10 ¶ 29)

Pursuant to this conspiracy, Defendant Wesseling filed an assault charge against Plaintiff, falsely stating that Plaintiff had knowingly caused physical harm to Defendant Owen, and further stating that Plaintiff "was seen kicking PO Owen in the chest and upper torso while PO was on ground, PO Owen was on official capacity and in uniform of the day." (Id. ¶ 30)

Pursuant to this conspiracy, Defendant Bell filed a complaint alleging that plaintiff had been guilty of disorderly conduct by "engaging in fighting," with Eric Jones., knowing that Plaintiff had done nothing but defend himself against a criminal attack. (Id. ¶ 34)

Pursuant to this conspiracy, Defendant Bell also filed a charge of resisting arrest against plaintiff, alleging that he had resisted a lawful arrest, and further stating "after being placed under arrest defendant attempted to physically resist arrest by a PO Little and PO Owen. Defendant was handcuffed after

refusing verbal commands from PO Haas P-431 and giving resistive tension, by pulling his arms away from arresting officers."  (Id. ¶ 35)

These fabricated allegations of assault, disorderly conduct, and resisting arrest were the result of a unity of purpose and common design to injure Plaintiff, said conspiracy included the participation of Owen, Little, Bell, Wesseling, and Haas.  (Id. ¶ 37)

These allegations regarding Plaintiff's friends were part of the conspirator's plan to eliminate useful witnesses by intimidation through the threat of criminal charges against them.  (Id. ¶ 41)

As part of the conspiracy, Bell and Wesseling falsely claimed that Plaintiff was belligerent, aggressive, and anti-police.  (Id. ¶ 42)

These allegations clearly set forth "an agreement between two or more persons to injure another by unlawful action."  The fabrication of allegations of assault, disorderly conduct, and resisting arrest, as well as the arrest itself, serve as the overt acts which were committed in furtherance of the conspiracy that caused injury to Plaintiff.  As circumstantial evidence of the conspiracy, Plaintiff argues that Defendants Wesseling and Bell filed charges based on allegedly false facts, which could only have been conveyed through Defendants Owen, Haas, and Little because Wesseling and Bell arrived after Plaintiff had been arrested.  Assuming the accuracy of these allegations, as this Court must, Plaintiff has stated a claim for conspiracy.   Therefore, Defendants' Motion to Dismiss Plaintiff's conspiracy claims in Count I and II is DENIED.

     D.    <u>Malicious prosecution under Ohio law.</u>

Plaintiff alleges Defendants engaged in malicious prosecution in violation of Ohio law. In Ohio, the elements of malicious prosecution are: (1) malicious institution or continuation of prior proceedings; (2) lack of probable cause; and (3) termination of the prior proceedings in the plaintiff's favor. *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 734 (1990).  The Ohio

Supreme Court defines "malice" for purposes of a malicious prosecution claim as "an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice." *Criss v. Springfield Twp.*, 564 N.E.2d 440, 443 (1990).  If prosecution is instituted absent probable cause, malice may be inferred. *See Mayes v. City of Columbus*, 664 N.E.2d 1340, 1346 (1995).

Under Ohio law, police officers may not be held liable for maliciously instigating the criminal process where they present to the prosecutor "a full and fair disclosure of all the material facts as revealed by [their] investigation, including [the accused's] exculpatory statements." *Radvansky*, 395 F.3d at 317, *quoting*, *Robbins v. Fry*, 594 N.E.2d 700, 701 (1991).  If the police officer complies with this obligation, their status is no more than a witness, who is immune from liability for malicious prosecution. *Id.*  However, the cloak of immunity is removed when a police officer provides false information or demonstrates "desire, direction, request or pressure for the initiation of criminal proceedings." *Id.* (internal citation omitted).

Defendants first argue that Plaintiff is time-barred from bringing a claim for malicious prosecution.  However, while the statute of limitations for malicious prosecution is one year, the cause of action does not commence until the prior actions are terminated in the defendant's favor.  Ohio Rev. Code § 2305.11(A)*; Levering v. Natl. Bank*, 100 N.E. 322 (1912).  The judgment in Plaintiff's appeal was entered on November 14, 2001.  Plaintiff filed his Complaint on September 16, 2002, and therefore his claim was timely filed.

Next, Defendants argue that Plaintiff cannot establish that any of the named Defendants made the decision to prosecute Plaintiff.  However, Plaintiff alleges that Defendants fabricated facts in order to initiate the criminal process.  Accordingly, Plaintiff's

allegations are that Defendants failed to provide the prosecutor a full and fair disclosure of the material facts and, therefore, do not receive immunity from liability.  Moreover, Plaintiff's complaint alleges he was arrested absent probable cause, giving rise to the inference of malice.   Finally, Plaintiff's complaint alleges that all criminal charges were terminated in his favor.  Consequently, Plaintiff's complaint states a claim for malicious prosecution pursuant to Ohio law.   Therefore, Defendants' Motion to Dismiss Count III is DENIED.

In summary, it is hereby ordered as follows:

1.      Defendants' Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12 (b)(1) (Doc.  11) is **DENIED**;

2.      Defendants' Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12 (b)(6) (Doc.  11) is **DENIED in PART** and **GRANTED in PART**.

a.      Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claim based on arrest without probable cause (Count I) is **GRANTED**;

b.      Defendants' Motion to Dismiss Plaintiff's Fourth Amendment claim based on arrest without probable cause (Count I) is **DENIED** as to Defendants Owen and Little;

c.      Defendants' Motion to Dismiss Plaintiff's Fourth Amendment claim based on arrest without probable cause (Count I) is **GRANTED** as to Defendants Bell, Wesseling, and Haas;

d.      Defendants' Motion to Dismiss Plaintiff's due process claim (Count II) is **DENIED**;

e.      Defendants' Motion to Dismiss Plaintiff's equal protection claim (Count IV) is **GRANTED**;

f.      Defendants' Motion to Dismiss Plaintiff's conspiracy claims (Count I and II) is **DENIED**; and

g.    Defendants' Motion to Dismiss Plaintiff's malicious prosecution claim (Count III) is **DENIED**;

**IT IS SO ORDERED.**

/s/ Michael H. Watson
Michael H. Watson, Judge
United States District Court